STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-111


IRMA FAYE GRANGER
AND HAROLD P. GRANGER

VERSUS

CALCASIEU PARISH POLICE JURY


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2010-5150, DIV. B
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

JAMES T. GENOVESE
JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, James T. Genovese, and John E. Conery, Judges.

**AFFIRMED.**


**V. Ed McGuire, III**
**Plauché, Smith & Nieset**
**1123 Pithon Street**
**Post Office Box 1705**
**Lake Charles, Louisiana 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Calcasieu Parish Police Jury**

**Jere Jay Bice**
**Veron, Bice, Palermo & Wilson, L.L.C.**
**721 Kirby Street**
**Post Office Box 2125**
**Lake Charles, Louisiana  70602**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Irma Faye Granger**
    **and Harold P. Granger**

**GENOVESE, Judge.**

In this personal injury case, Defendant, Calcasieu Parish Police Jury (Police Jury), appeals the trial court judgment rendered in favor of Plaintiffs, Irma Faye Granger and Harold P. Granger, finding it liable for the damages incurred by Mrs. Granger as a result of her trip and fall on Police Jury property and for Mr. Granger's loss of consortium resulting therefrom. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2009, while working as a minute clerk for the Clerk of Court for Calcasieu Parish, Mrs. Granger tripped and fell as she traversed the brick-paved walkway outside the Calcasieu Parish Judicial Center owned by the Police Jury. Mrs. Ganger alleges that the brick-paved walkway had defective brick pavers which caused her fall and injuries.

Following the accident, Mr. and Mrs. Granger filed suit against the Police Jury, alleging that as owner of the crosswalk where Mrs. Granger fell, it was liable for "[a]llowing negligent and unreasonably dangerous brick pavers to protrude from the crosswalk between the courthouse and the judicial center[.]" Mrs. Granger claimed that she "was injured when she tripped on a brick paver and was thrown forward, landing on her hands and knees while crossing from the courthouse to the judicial center." She suffered a lateral meniscus tear to her right knee and subsequently underwent knee surgery. Mr. Granger sought loss of consortium damages.[1]

---

[1]A First Supplemental and Amending Petition was filed asserting that the amount of no individual petitioner's cause of action exceeded $50,000.00.

Following a bench trial on September 18, 2013, the trial court found the Police Jury 100% at fault for Mrs. Granger's accident and awarded the total of $50,000.00 "to both" Mr. and Mrs. Granger. Judgment to this effect was signed on October 2, 2013. The Police Jury appeals.

## ASSIGNMENTS OF ERROR

The Police Jury sets forth four assignments of error:

1.    The Trial Court committed legal error in finding that plaintiff established that the condition which caused her fall created an unreasonable risk of harm.

2.    The Trial Court committed legal error when it found that the Calcasieu Parish Police Jury had actual or constructive notice of the particular defect which plaintiff asserted caused her damage.

3.    The Trial Court committed legal error when it found that the Calcasieu Parish Police Jury failed to take corrective action within a reasonable amount of time to remedy the defect alleged by plaintiff.

4.    The Trial Court erred in failing to assess plaintiff with any fault at all for her accident.

## LAW AND DISCUSSION

Mrs. Granger's claims against the Police Jury are rooted in La.Civ.Code articles 2317 and 2317.1. Louisiana Civil Code Article 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." Louisiana Civil Code Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall

2

preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

The Police Jury's liability for a defective thing within its custody or care is rooted in La.R.S. 9:2800(C). Louisiana Revised Statutes 9:2800 provides, in pertinent part:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>
> D. Constructive notice shall mean the existence of facts which infer actual knowledge.

Our supreme court in *Chambers v. Village of Moreauville*, 11-898, p. 5 (La. 1/24/12), 85 So.3d 593, 597, opined:

> Under La. R.S. 9:2800, in order to prove a public entity is liable for damages caused by a thing, the plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation. *Lasyone v. Kansas City Southern R.R.*, 00-2628 (La.4/3/01), 786 So.2d 682, 690; *Dupree v. City of New Orleans*, 1999-3651 (La.8/31/00), 765 So.2d 1002, 1008.

The Police Jury does not dispute its ownership of the brick-paved walkway at the Calcasieu Parish Judicial Center. It does, however, dispute: (1) that the

3

walkway was defective, creating an unreasonable risk of harm; (2) that it knew a dangerous condition existed; (3) that knowing of the harmful defect's existence, it failed to correct it; and, (4) that the defect is what caused Mrs. Granger's fall and injuries.

In three of its four assigned errors, the Police Jury asserts that the trial court "committed legal error" in its findings. In brief, the Police Jury argues that the trial court's "analysis of the law applicable to this case is simply erroneous." It concludes that the trial court committed legal error asserting that a de novo review of the record on appeal must be conducted by this court. We disagree. The underlying determinations by the trial court were factual; thus, the manifest error standard of review shall be applied by this court to the trial court's factual determinations.

Our supreme court in *Broussard v. State*, 12-1238, p. 13 (La. 4/5/13), 113 So.3d 175, 185-86, explained that the determination of an unreasonable risk of harm is a question of fact, as follows:

> Because the determination of whether a defective thing presents an unreasonable risk of harm "encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court." *Reed* [*v. Wal-Mart Stores, Inc.*], 97-1174[, p. 4 (La. 3/4/98)], 708 So.2d [362,] 364-65. Accordingly, the fact-finder's unreasonable risk of harm determination is subject to the manifest error standard of review and should be afforded deference on appeal. *Id*. at 364-65. Under the manifest error standard of review, a court of appeal may not set aside a jury's finding of fact unless it is manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). The reviewing court must only decide whether the fact-finder's conclusion was reasonable, not whether it was right or wrong. *Stobart v. State through DOTD*, 617 So.2d 880, 882 (La.1993). In order to reverse a jury's factual finding as manifestly erroneous, an appellate court must find the record, when reviewed in its entirety, (1) contains no reasonable factual basis for the jury's finding and (2) establishes the finding is clearly wrong. *Id*. The court

4

of appeal must always be mindful that if the jury's findings "are reasonable in light of the record reviewed in its entirety . . . [it] may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 882-83; *Rosell*, 549 So.2d at 844.

Applying these legal precepts to the instant matter, we find the record before this court contains a reasonable factual basis to support the trial court's determination that the brick-paved walkway presented an unreasonable risk of harm to Mrs. Granger. Moreover, the record supports the trial court's finding that the Police Jury knew that a dangerous condition existed and that it failed to correct it.

The Police Jury discusses a series of trip-and-fall cases, comparing them to the instant matter; however, we note that our supreme court has cautioned against oversimplifying the jurisprudence relative to such matters.

> [W]e emphasize again that each case involving an unreasonable risk of harm analysis must be judged under its own unique set of facts and circumstances. There is no bright-line rule. . . . [E]ach defect is equally unique, requiring the fact-finder to place more or less weight on different considerations depending on the specific defect under consideration. What may compel a trier-of-fact to determine one defect does not present an unreasonable risk of harm may carry little weight in the trier-of-fact's consideration of another defect.

*Id.* at 191 (citations omitted).

In the instant matter, the Police Jury questions Mrs. Granger's credibility and integrity. It alleges that just three days after her fall, Mrs. Granger could not point out the exact problematic brick paver. The Police Jury argues that the frequency in which Mrs. Granger walked this route made her familiar therewith; thus, it alleges that her lack of care and attention contributed to her accident. However, we find the record contains sufficient evidence refuting the Police Jury's contentions, and supporting the trial court's ruling.

5

Kane Webb, Director of Facility Management for the Police Jury, testified under cross-examination that issues with the brick pavers existed prior to Mrs. Granger's fall. The Police Jury's records detailed problems with the brick pavers. Documentation showed that three falls had occurred on walkways in and around the Calcasieu Parish Judicial Center. Mr. Webb admitted the brick pavers would break or become loose such that they had to either be repaired or replaced. He also testified that the Police Jury knew that the brick pavers were not as thick as was recommended in the design specifications for the walkway.

Marc Ferguson, an employee of the Police Jury since 2002, testified that one of his primary responsibilities is the initial investigation of any accident involving Parish property. He was notified of Mrs. Granger's accident the day it occurred and, three days later, on Monday, October 12, 2009, he met with Mrs. Granger to conduct an investigation. According to Mr. Ferguson, he asked Mrs. Granger to show him what caused her fall; however, she was unable to point to anything specific that caused her to fall on the previous Friday.

Jay Delafield, an attorney, witnessed Mrs. Granger trip and fall. He testified that immediately following her fall, he noticed movement of a brick paver where Mrs. Granger fell. The trial court clearly considered the testimony of the eyewitness (Mr. Delafield) to be credible and poignant. The Police Jury takes issue with the fact that three days after her fall, Mrs. Granger could not, with specificity, point out the exact problematic brick paver to Mr. Ferguson. Notably, however, the trial court found Mr. Delafield's testimony particularly pertinent, stating in its ruling:

> I'm unable and shouldn't and can't ignore the testimony of Mr. Delafield, who is very bright, articulate, was an eyewitness, an excellent historian. . . .

. . . I think it's appropriate to go with the testimony of the person who was the eyewitness at the time. I don't know what happened in the intervening three days. . . .

But I don't believe that Mr. Delafield made it up, that you had a paver out there that was moving when she stepped on it and caused her to fall. Maybe his description of how much it moved was more than it was, but it moved and it caused her to fall. And that's precisely the kind of defect and issue and problem that the parish had been on notice of for at least five years and had made repairs to correct the movement and the defects, because you have broken pavers over that walkway.

So it's -- the testimony is there. It's sufficient to establish an unreasonable risk. Notice was present to the parish. That's evident from the excellent discovery work that was done to find the documents and highlight them for the record.

The trial court's determination that the Police Jury was negligent is entitled to great deference. We further acknowledge and recognize that when questions of integrity and conflicting testimonies exist, the trial court is in the best position to assess the demeanor and judge the credibility of witnesses. *Lewis v. Proline Systems, Inc.*, 13-88 (La.App. 3 Cir. 6/19/13), 117 So.3d 289, *writ denied*, 13-2134 (La. 11/22/13), 126 So.3d 488 (citing *Robin v. Allstate Ins. Co.*, 03-1009, 03-926 (La.App. 3 Cir. 3/24/04), 870 So.2d 402, *writ denied*, 04-1383 (La. 9/24/04), 882 So.2d 1143). Weighing the entirety of the evidence, including the photographs in the record, we conclude the trial court was not clearly wrong or manifestly erroneous in finding that the Police Jury had legal and satisfactory notice of the defect in the brick pavers and failed to correct the problems of which they were aware and which caused Mrs. Granger's injuries.

In their final assignment of error, the Police Jury contends that the trial court erred in determining that Mrs. Granger was free of comparative fault. The Police Jury claims that Mrs. Granger admitted she knew of the problems with the brick pavers. It asserts that Mrs. Granger "walked across the sidewalk where she had her

accident multiple times per day, usually at least four times per day, Monday through Friday[,] from 1996 until her accident in 2009[,]" and that "she experienced irregularities in the brick pavers prior to her accident." Because Mrs. Granger was aware of the issues with the brick pavers which existed prior to her fall, the Police Jury argues it was error for the trial court not to find that Mrs. Granger was inattentive, careless, or both. The Police Jury requests that this court assess Mrs. Granger "with a minimum of 50% liability for the accident, but more appropriately, 75% to 85% liability for the accident."

The trial court's apportionment of fault is a factual determination subject to the manifest error or clearly wrong standard of review; therefore, the trial court's apportionment of fault is afforded much discretion. *Johnson v. St. Romain*, 11-266 (La.App. 3 Cir. 10/5/11), 74 So.3d 836. Relative to this issue, the trial court, again, clearly credited the testimonies of Mrs. Granger and Mr. Delafield in reaching its determination that Mrs. Granger was free from fault. We cannot say that the trial court was clearly wrong or that it manifestly erred. Therefore, we find this assignment of error lacks merit.

Given the evidence herein, there was a reasonable factual basis for the trial court's findings and no manifest error. Consequently, we affirm the trial court's judgment in all respects.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed in its entirety. Costs are assessed to Defendant/Appellant, Calcasieu Parish Police Jury, in the amount of $6,568.48, pursuant to La.R.S. 13:5112.

**AFFIRMED.**

8